# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE )
)
) Def. I.D. # 1611016239
v. )
)
)
ELTON PUMPHREY, )
)
Petitioner/Defendant. )

Submitted: September 14, 2020

Decided: October 19, 2020

*Upon Petitioner's Motion for Postconviction Relief (R-1)*

## DENIED

*Upon Petitioner's Motion to Strike Portions of Trial Counsel's Affidavit*

## DISMISSED AS MOOT

## MEMORANDUM OPINION AND ORDER

Elton Pumphrey, James T. Vaughn Correctional Center, 1181 Paddock Road, Smyrna, DE 19977; Petitioner/Defendant.

Patrick J. Collins, Esquire, Collins & Associates, Patrick J. Collins, Esquire, 8 East 13th Street, Wilmington, DE 19801; Attorney for Petitioner/Defendant Elton Pumphrey.

Amanda Nyman, Esquire; Deputy Attorney General, Department of Justice, 114 East Market Street, Georgetown, DE 19947; Attorney for State of Delaware.

**KARSNITZ, J.**

# MOTION FOR POSTCONVICTION RELIEF

## I.    INTRODUCTION

On June 10, 2019, Elton Pumphrey ("Petitioner," "Defendant," or "Pumphrey") filed a timely Motion for Postconviction Relief.[1] This Court approved Petitioner's request for the appointment of counsel[2] and postconviction counsel was assigned to the case.[3] On June 12, 2020, Petitioner filed his Amended Motion for Postconviction Relief (the "Rule 61 Motion").[4] On July 8, 2020, Petitioner's trial counsel ("Trial Counsel") filed an affidavit of trial counsel ("Trial Counsel's Affidavit")[5] under Superior Court Criminal Rule 61.[6] On August 17, 2020, the State filed its Response to the Rule 61 Motion (the "Response").[7] On September 14, 2020, Petitioner filed two pleadings: his Reply to the Response and Trial Counsel's Affidavit (the "Reply")[8], and a Motion to Strike Portions of Trial Counsel's Affidavit

---

[1] A667-68 l.
[2] A686.
[3] A10-11; D.I. 109.
[4] D.I. 111.
[5] D.I. 112.
[6] Super. Ct. Crim. R. 61(g).
[7] D.I. 113.
[8] D.I. 115.

1

(the "Motion to Strike").[9] On September 23, Petitioner filed his own affidavit ("Petitioner's Affidavit").[10]

After a full review of the record and the pleadings, I find that Petitioner has failed to satisfy either the performance part or the prejudice part of the two-part test set forth in *Strickland v. Washington*[11] ("*Strickland*"), as adopted in Delaware and as discussed more fully below, as to his allegations of ineffective assistance of Trial Counsel.

I further find that, based on the record of the pretrial, trial and appellate proceedings in this case, and the Rule 61 Motion, the Response, the Reply, Trial Counsel's Affidavit and Petitioner's Affidavit, that Petitioner is not entitled to relief. Thus, the record need not be further expanded, no further pleadings need be filed by the parties, and no evidentiary hearing need be held.

The Rule 61 Motion is **DENIED**.

I finally find that the Motion to Strike is moot, because I have excluded from my consideration those portions of the Trial Counsel's Affidavit that Petitioner seeks to strike, and nonetheless Petitioner is not entitled to relief.

The Motion to Strike is **DISMISSED AS MOOT**.

---

[9] D.I. 114.
[10] D.I. 117.
[11] 466 U.S. 668 (1984).

## II.  BACKGROUND

### A. PROCEDURAL HISTORY

On November 25, 2016, police from Troop 4 swore out an arrest warrant for Petitioner, charging him with Offensive Touching, Carjacking, and Robbery First Degree (Victim over 62).[12]  Petitioner turned himself in on the warrant on that date.[13] The Court of Common Pleas held a preliminary hearing on December 15, 2016; the judge found probable cause and transferred the case to Superior Court.[14]  On January 23, 2017, a grand jury returned an indictment against Petitioner for the same three charges.[15]

Michael Capasso, Esquire, originally represented Petitioner.  Petitioner refused video arraignment[16] and filed a motion to disqualify counsel.[17] That motion was rendered moot when Trial Counsel, Jeffrey P. McLane, entered his appearance.[18]

On April 3, 2017, Petitioner rejected an offer to plead guilty to Carjacking.[19] At the final case review on June 7, 2017, Petitioner rejected a

---

[12] A13.
[13] A41.
[14] A64-66.
[15] A68-69.
[16] A1; D.I. 6.
[17] A1; D.I. 7.
[18] A1; D.I. 8.
[19] A70.

3

second offer to plead guilty to Carjacking Second Degree with an habitual offender sentence of five years and Robbery Second Degree, with a recommendation for probation.[20] The next day, June 8, 2017, the Court held a hearing on a motion to exclude the eyewitness identifications.[21] The judge denied the motion.[22]

The case proceeded to a jury trial beginning June 12, 2017. The State presented evidence for two days. At the conclusion of the State's case, the defense presented a motion for judgment of acquittal,[23] which the trial judge denied.[24] The defense did not present a case.[25] The jury deliberated for two hours[26] before finding Petitioner guilty of all three charges.[27] Because two of the charges have minimum mandatory sentences, the trial judge revoked Petitioner's bail.[28]

On June 15, 2017, the day after the verdict, the State filed a motion to declare Petitioner an habitual offender on both the Carjacking and Robbery First

---

[20] A72-73.
[21] A3; D.I. 28.
[22] A3; D.I. 29.
[23] A363-366.
[24] A368.
[25] A374.
[26] A429-430.
[27] A430-432.
[28] A432.

Degree charges.[29]

On June 20, 2017, Trial Counsel filed a Motion for Judgment of Acquittal, although procedurally it was a renewal of the trial motion.[30] The State filed its response on July 6, 2017.[31] On July 27, 2017, the judge convened an office conference regarding the motion. The judge granted the defense the opportunity to obtain a transcript and file a written amendment to the motion.[32]

The defense did not supplement the motion but rather filed a Motion for New Trial on August 4, 2017.[33] The State responded on August 11, 2017, arguing in part that the motion was untimely filed.[34] The judge convened an office conference regarding the pending motions on September 12, 2017. The judge denied the motion as untimely but also denied it on substantive grounds.[35] The Court reserved decision on the motion for judgment of acquittal.[36] By letter order on December 21, 2017, the judge denied that motion.[37]

The defense opposed the State's habitual offender motion, asserting that

[29] A460-463.
[30] A464-471.
[31] A472-477.
[32] A483.1
[33] A487-495.
[34] A496-509.
[35] A514-515.
[36] A521-522.
[37] A524-525.

5

the motion failed to cite the requisite number of prior felonies.[38] Alternatively, the defense urged the Court to sentence Petitioner based on 11 *Del.* C. § 4214(a) rather than 11 *Del.* C. § 4214(c).[39] The State responded, arguing that Petitioner had already been sentenced as an habitual offender in 2011 and remained so.[40] The Court sentenced Petitioner on February 9, 2018. The Court resolved the controversy by sentencing Petitioner under 11 *Del.* C. § 4214(a).[41] The Court imposed a sentence of 16 years of Level V time, followed by descending levels of supervision.[42]

Petitioner, now represented by Nicole Walker, Esquire ("Appellate Counsel"), filed an appeal to the Delaware Supreme Court. The State conceded that Offensive Touching is a lesser-included offense of Robbery First Degree and conceded that insufficient evidence existed for a separate charge of Offensive Touching.[43] On February 28, 2019, the Supreme Court affirmed Petitioner's convictions and sentence, except for the Offensive Touching charge, which it vacated.[44] On March 26, 2019, Petitioner appeared before this Court

---

[38] A526-528.
[39] A528.
[40] A530-531.
[41] A533.
[42] A546-548; A549-555.
[43] A604.
[44] *Pumphrey v. State,* 2019 WL 507672 (Del. Feb. 8, 2019); A644-649.

6

to be resentenced.[45] For all intents and purposes, vacating the Offensive Touching conviction had no effect on the sentence.[46] It appears this Court did correct the credit time on the original sentence, however.[47]

## B. STATEMENT OF FACTS

On direct appeal, the Delaware Supreme Court provided an overview of the facts:

> Defendant Elton Pumphrey appeals his conviction of Carjacking in the First Degree, Robbery in the First Degree, and Offensive Touching. Those convictions result from an incident on November 21, 2016, when a sixty-four-year-old Jeffrey Lessig, Sr. agreed to give Pumphrey a ride home. As Lessig drove Pumphrey home, he slowly pulled into a cul-de-sac to ask Pumphrey for further directions. Pumphrey then pulled the keys out of the ignition, grabbed Lessig's face and threatened to rob him, and, when Lessig stated that he had no money, he took Lessig's car keys and cell phone and exited the vehicle. Lessig also left his vehicle and approached a bystander to ask for help. As Lessig sought help, Pumphrey re-entered the vehicle and drove away.[48]

Then the Court went on to describe the case in further detail:

---

[45] A650-658.

[46] A659-666.

[47] A655.

[48] *Pumphrey v. State,* 2019 WL 507672 at *1 (Del. Feb. 8, 2019); A644.

7

On November 21, 2016, Lessig received a call from his granddaughter notifying him that the water heater in her manufactured trailer home, which she rented from Lessig, had malfunctioned. She also stated that there was a man looking at the water heater who wanted to speak with Lessig. When Lessig arrived at the home in the Cool Springs Farms development, he saw his grandson standing outside the home along with three other men. Inside the home, one of the men-later identified as Pumphrey---offered to repair the water heater for $40. Lessig declined the offer and walked outside toward his two-seat Mazda Miata. At this point, the parties' stories diverge.

The State alleges that Pumphrey asked Lessig for a ride, and, with Lessig's permission, he entered the car and gave directions as Lessig drove. After Lessig turned onto a cul-de-sac and asked Pumphrey where he lived, Pumphrey pulled the keys out of the ignition and twice threatened to rob Lessig-once grabbing him by the face. Lessig gave Pumphrey his empty wallet and told him that he had no money. Pumphrey then took Lessig's keys and mobile phone as he exited the car. Lessig also left the car and approached a man nearby who let him use his cell phone to call the police. During that time, Pumphrey got back into Lessig's car and drove away. The bystander stayed with Lessig until Trooper Murray, the responding police officer, arrived.

Murray canvassed the neighborhood and asked a local resident if he had heard who committed the crime. The resident began pronouncing a word starting with "B," but was unable to think of the

8

full name. Murray then suggested that it might be "Boyer," a name affiliated with crime in the Cool Springs Farms area, which the resident confirmed. Murray included the possible "Boyer" suspect in his contemporaneous notes. The next day, Detective Doughty took over the investigation and reviewed Murray's police report. Doughty thought that the section of the report concerning Boyer was vague, so he emailed Murray instructing him to "clean it up."

Police also interviewed Lessig's grandson, who said that "Bowl" was the man inside the trailer home looking at the hot water heater. Another individual in the Cool Springs Farms development told Doughty that "Bowl" was Pumphrey's nickname. Lessig described the perpetrator as a black male between 6'2" to 6'4" and 200 to 210 pounds. Lessig's grandson provided a similar description of the man looking at the water heater, describing him as a black male who was 6'4" to 6'5", 220 to 230 pounds, and appeared to be in his forties.

After obtaining Pumphrey's name, Doughty created a six-photo lineup using Pumphrey's mugshot and pictures of men of similar appearance. Doughty did not pursue an investigation of "Boyer" because he did not fit the general description of the suspect. Further, the trial court found that there was no evidence that Boyer was in the area at the time of the offense.

Doughty conducted the photo identification at Lessig's trailer home two days after the incident occurred, which he audiotaped in its entirety. First, Doughty presented the photo lineup to Lessig's grandson, who identified

9

Pumphrey "with not a doubt in [his] mind," "110%" as "the person who jacked my pop." Doughty then presented the photo lineup to Lessig in the kitchen, while his grandson remained in the living room. Lessig told Doughty that he was not certain he could identify the perpetrator. Lessig's grandson can be heard on the audiotape encouraging him to look at the photo lineup. Doughty explained that the perpetrator was not necessarily in the lineup and that, if Lessig did not see him, he should not feel compelled to make an identification.

Doughty then showed Lessig the photo lineup and Lessig identified Pumphrey as the perpetrator, although he told Doughty that he did not think Pumphrey wore glasses during the incident, as Pumphrey did in his mugshot.

Doughty obtained an arrest warrant for Pumphrey, who turned himself in the same day. In his interview with Doughty, Pumphrey offered a different account of the events. He admitted that he was in the trailer home with Lessig and Lessig's grandson to examine the water heater, that he drove the car after borrowing it from Lessig, purchased liquor while driving the car, and later abandoned the car on the side of the road after it broke down without notifying Lessig. He further asserted that those events took place the day after Lessig was carjacked by a different person.[49]

---

[49] *Pumphrey* at *1-2; A644-645.

## III. DISCUSSION

### A. PROCEDURAL BARS UNDER RULE 61(i).

Before addressing the merits of the Rule 61 Motion, I first address the four procedural bars of Superior Court Criminal Rule 61(i).[50] If a procedural bar exists, as a general rule I will not address the merits of the postconviction claim.[51] Under the Delaware Superior Court Rules of Criminal Procedure, a motion for post-conviction relief can be barred for time limitations, successive motions, failure to raise procedural claims earlier in the proceedings, or former adjudication.[52]

First, a motion for postconviction relief exceeds time limitations if it is filed more than one year after the conviction becomes final, or if it asserts a retroactively applicable right that is newly recognized after the judgment of conviction is final, more than one year after the right was first recognized by the Supreme Court of Delaware or the United States Supreme Court.[53] In this case, Petitioner's conviction became final for purposes of Rule 61 at the conclusion of direct review when the Delaware Supreme Court issued its mandate on February 28, 2019.[54] Petitioner filed

---

[50] *Ayers v. State*, 802 A.2d 278, 281 (Del.2002) (citing *Younger v. State,* 580 A.2d 552, 554 (Del. 1990).
[51] *Bradley v. State*, 135 A.3d 748 (Del 2016); *State v. Page*, 2009 WL 1141738, at*13 (Del. Super. April 28, 2009).
[52] Super. Ct. Crim. R. 61(i).
[53] Super. Ct. Crim. R. 61(i)(1).
[54] D.I. 96.

11

his first motion for postconviction relief on June 10, 2019. Therefore, consideration of that first motion is not barred by the one-year limitation of Rule 61(i)(1).

Second, second or subsequent motions for postconviction relief are not permitted unless certain conditions are satisfied.[55] Since this is Pumphrey's first Rule 61 Motion, this bar does not apply.

Third, procedural grounds for relief "not asserted in the proceedings leading to the judgment of conviction" are barred unless the movant can show "cause for relief" and "prejudice from [the] violation."[56] Pumphrey does not assert procedural grounds for relief not asserted in the proceedings leading to the judgment of conviction. Thus, this bar does not apply in this case.

Fourth, grounds for relief formerly adjudicated in the case, including "proceedings leading to the judgment of conviction, in an appeal, in a post-conviction proceeding, or in a federal habeas corpus hearing" are barred.[57] Pumphrey's grounds for relief are based on claims of ineffective assistance of counsel. It is well settled Delaware law that, as collateral claims, ineffective assistance of counsel claims are properly raised for the first time in postconviction proceedings.[58] Thus, this bar does not apply in this case.

---

[55] Super. Ct. Crim. R. 61(i)(2)

[56] Super. Ct. Crim. R. 61(i)(3).

[57] Super. Ct. Crim. R. 61(i)(4).

[58] *State v. Schofield*, 2019 WL 103862, at *2 (Del. Super. January 3, 2019); *Thelemarque v. State*, 2016 WL 556631, at *3 (Del. Feb. 11, 2016) ("[T]his Court will not review claims of ineffective

12

Finally, the four procedural bars to do not apply either to a claim that the Court lacked jurisdiction or to a claim that pleads with particularity that new evidence exists that creates a strong inference of actual innocence,[59] or that a new retroactively applied rule of constitutional law renders the conviction invalid.[60] Pumphrey does not claim that he has new evidence that creates an inference of his actual innocence, or that a new retroactively applied rule of constitutional law renders his conviction invalid.

Thus, none of the procedural bars under Rule 61 applies in this case, and I will consider Pumphrey's claims on the merits.

## B. PETITIONER HAS FAILED TO DEMONSTRATE THAT HIS REPRESENTATION BY TRIAL COUNSEL WAS INEFFECTIVE.

Petitioner brings three claims based on ineffective assistance of his Trial Counsel, and a fourth claim of the cumulative effect of those three claims, which claims are assessed under the two-part standard established in *Strickland v. Washington*,[61] as applied in Delaware.[62] Under *Strickland*, Defendant must show that (1) Trial Counsel's representation "fell below an objective standard of

---

assistance of counsel for the first time on direct appeal."); *Watson v. State*, 2013 WL 5745708, at *2 (Del. Oct. 21, 2013) ("It is well-settled that this Court will not consider a claim of ineffective assistance that is raised for the first time in a direct appeal.").

[59] Super. Ct. Crim. R. 61(i)(5).

[60] Super. Ct. Crim. R. 61(d)(2)(i) and (ii).

[61] 466 U.S. 668 (1984).

[62] *Albury v. State*, 551 A.2d 53 (Del. 1988).

13

reasonableness" (the "performance part"); and (2) the "deficient performance prejudiced [his] defense." (the "prejudice part").[63] In considering the performance part, the United States Supreme Court was mindful that "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable."[64] *Strickland* requires an objective analysis, making every effort "to eliminate the distorting effects of hindsight" and to "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."[65] "[S]trategic choices about which lines of defense to pursue are owed deference commensurate with the reasonableness of the professional judgments on which they are based."[66]

As to the performance part, Petitioner must demonstrate that Trial Counsel's (1) failure to seek redactions to Petitioner's statement (which allegedly contained vouching), (2) statement to the jury, and implication while questioning witnesses, that Petitioner had a criminal history, and (3) general trial strategy, as discussed more fully below, were unreasonable decisions. In my view, Trial Counsel's decisions were reasonable strategic decisions under the performance part of the *Strickland* test.

---

[63]  *Id.* at 687.
[64]  *Id.* at 690.
[65]  *Id.* at 689.
[66]  *Id.* at 681.

14

As to the prejudice part, Petitioner must demonstrate that there exists a reasonable probability that, but for Trial Counsel's unprofessional errors, the outcome of the trial would have been different.[67] Even if Trial Counsel's performance were professionally unreasonable, it would not warrant setting aside the judgment of conviction if the error had no effect on the judgment.[68] A showing of prejudice "requires more than a showing of theoretical possibility that the outcome was affected."[69]

*Strickland* teaches that there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in a particular order, or even to address both parts of the inquiry if the defendant makes an insufficient showing on one. In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant because of the alleged deficiencies. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, that course should be followed.[70] In every case, the court should be concerned with whether, despite the strong presumption of reliability, the result of the particular proceeding is unreliable because of a breakdown in the adversarial process that our system counts on to produce just results.[71]

---

[67] *Albury*, at 687; *Zebroski v. State*, 822 A.2d 1038, 1043 (Del. 2003); *Wright v. State*, 671 A.2d 1353, 1356 (Del. 1996).
[68] *Strickland*, at 691.
[69] *Frey v. Fulcomer*, 974 F.2d 348, 358 (3d Cir. 1992).
[70] *Strickland*, at 697.
[71] *Id.* at 696.

15

In this case, Petitioner has not demonstrated that there exists a reasonable probability that, but for Trial Counsel's alleged errors, the outcome of the trial would have been different.

**Claim I – Non-Redaction of Petitioner's Statements**

Petitioner alleges that Trial Counsel provided ineffective assistance to him by failing to seek redactions to Petitioner's statement that had previously been given to the police, which contained alleged impermissible vouching for a State witness.[72] In responding to this claim, Trial Counsel states that "Pumphrey advocated for this very strategy in order to advance the defense theory of sloppy and misleading police work in order to receive the benefit of a jury instruction on the lesser included offense of Unauthorized Use of a Motor Vehicle ("UUMV")."[73] The defense theory was that Petitioner "borrowed" the car on a different date, and thus there must be a third person ("Boyer") who committed the carjacking on the date in question. Although the jury was given the UUMV instruction, it chose not to accept the defense theory, and found Petitioner guilty of Carjacking Second Degree.

In support of this theory, the Superior Court Judge presiding over the trial

---

[72] Rule 61 Motion at 30.
[73] Trial Counsel's Affidavit, paragraph entitled "Ground One: Denied."

16

"found that trial counsel ... effectively argued to the jury that there was another suspect that the police decided not to pursue."[74]

The Delaware Supreme Court addressed Petitioner's contention that the introduction of the detective's comments during Petitioner's police interrogation constituted improper vouching.[75] In Petitioner's direct appeal, the Supreme Court found that Petitioner's argument had been waived.[76] The Supreme Court found that Trial Counsel offered no objection to admitting the interrogation video into evidence, yet objected immediately afterwards when the State asked the detective to "explain the consistencies and inconsistencies" between the differing versions of the witnesses' accounts.[77] The trial court sustained Petitioner's objection, and instructed the jury that it is their "duty and responsibility to determine the facts" and resolve contradictions in testimony."[78] The Supreme Court noted that Trial Counsel also proposed redactions of other interviews, but not of Petitioner's interview, suggesting that Petitioner strategically chose not to redact the vouching.[79] Therefore, the Supreme Court found that Petitioner's argument had been waived.[80]

---

[74] *Pumphrey v. State,* 204 A.3d 828, *5 (Del. 2019); Rule 61 Motion A644-649.
[75] *Pumphrey v. State,* 204 A.3d 828, *6 (Del. 2019); Rule 61 Motion A644-649.
[76] *Id.*
[77] *Id.*
[78] *Id.*
[79] *Pumphrey v. State,* 204 A.3d 828, FN 30 (Del. 2019); Rule 61 Motion A644-649.
[80] *Pumphrey v. State,* 204 A.3d 828, *6 (Del. 2019); Rule 61 Motion A644-649.

Taking all of this into consideration, it is clear to me that Trial Counsel made a strategic decision to not seek redactions of Petitioner's police interview in order to argue that the police, in his opinion, did not complete a full investigation before deciding that Petitioner was the culprit. In my view, Trial Counsel's strategic decision was reasonable.

**Claim II – Reference to Petitioner's Criminal History**

Petitioner alleges that Trial Counsel provided ineffective assistance to him because he referred to Petitioner's criminal history and fingerprint record during trial.[81] Trial Counsel counters that

> Mr. Pumphrey requested counsel to weave a coherent story of faulty police work around the issues with his claimed innocent and lawful act of borrowing a car at a different time from the carjacking itself. To do so, counsel was required to address the lack of fingerprints in the context of the very large number of prints found on Lessig's automobile.[82]

In addition, Trial Counsel states that

> [p]art of the overall mistake trial strategy was to emphasize the lack of prints identifiable with Pumphrey at the time Lessig's car was discovered in spite of his prints residing in the identification system. DSP reported at least twice that 11 fingerprints of value were

---

[81] Rule 61 Motion at 34.
[82] Trial Counsel's Affidavit at ¶ 23.

18

recovered from the car yet no further investigation tied the prints to Pumphrey. Here, the logical inference could have been that Boyer or any of the multiple black males described at trial took the car from Lessig.[83]

Therefore, admitting that Petitioner had a criminal record and fingerprints in the system was a strategic decision made by Trial Counsel to highlight that Petitioner's fingerprints were not found in Lessig's car, and this strategic decision was reasonable.

## Claim III – Unreasonable trial Strategy

Petitioner alleges that Trial Counsel provided ineffective assistance to him because Trial Counsel pursued an unreasonable trial strategy.[84] Trial Counsel's response is that he

> parsed through the trial record to criticize the defense highlight of DSP's incorrect timing; lack of fingerprints; failure to record interviews; failure to dust for prints within the Lessig residence; lack of DNA from the liquor bottle found in Lessig's car; lack of bystander interviews; the so called "phantom" Boyer suspect (an actual person from the area of the offense); and the lack of an array for this phantom (who is apparently known to postconviction counsel to stand 5' 7").[85]

---

[83] Trial Counsel's Affidavit at ¶ 24.
[84] Rule 61 Motion at 34.
[85] Trial Counsel's Affidavit at ¶ 28.

19

Petitioner has submitted an affidavit in which he states that, after reviewing Trial Counsel's Affidavit, he agrees that he did not want to accept the State's offer to plead guilty, and he did not want to testify at trial, because he did not want the jury to hear about his criminal history.[86] However, he denies that he ever directed Trial Counsel to pursue any particular trial strategy, including a trial strategy of attempting to obtain a conviction for a lesser included offense of UUMV.[87] Although Petitioner now finds fault with Trial Counsel's strategy because he was convicted, according to Trial Counsel, Petitioner requested Trial Counsel to use this very strategy.[88] Petitioner cannot now take a different position with the benefit of hindsight. Furthermore, Petitioner is unable to overcome the *Strickland* presumption that Trial Counsel used a reasonable trial strategy.

**Claim IV – Cumulative Effect of Claims I, II and III**

Finally, Petitioner argues that the cumulative effect of Trial Counsel's alleged errors caused him prejudice.[89] However, even if I were to find that Trial Counsel's performance was below an objective standard of reasonableness, Petitioner is unable to show that redacting his interview, not mentioning his criminal history or fingerprint record, and pursuing a different trial strategy

---

[86] Petitioner's Affidavit at 1.
[87] *Id.*
[88] Trial Counsel's Affidavit at ¶ 23.
[89] Rule 61 Motion at 44.

20

would have led to a different result; i.e., not being convicted as charged at trial.

Here, the evidence against Petitioner was found by the trial court judge to be "significantly overwhelming."[90]

## IV.    MOTION TO STRIKE

In his Motion to Strike, Petitioner argues that, in Trial Counsel's Affidavit, Trial Counsel breached his duty of confidentiality and his duty of loyalty to Petitioner, his former client.  Petitioner cites the Delaware Rules of Professional Conduct,[91] the ABA Standards for Criminal Justice,[92] and ABA Formal Ethics Opinion 10-456.[93]  The gravamen of Petitioner's argument is that Trial Counsel went beyond the disclosures necessary to rebut claims of ineffective assistance of counsel and advocated a position against his former client's legal position. Specifically, Petitioner objects to the following paragraphs of Trial Counsel's Affidavit, in whole or in part:  6, Ground One: Denied, 10, 14, 15, 16, 17, 19, 25, 26, 29, 30, 31 and 33.

---

[90] *Pumphrey v. State,* 204 A.3d 828, "'5 (Del. 2019); Rule 61 Motion A644-649.

[91] Del. Lawyers' R. Prof'l Conduct 1.6, 1.7 and 1.9, and Official Comments thereto.

[92] These standards have been held by the United States Supreme Court and the Delaware Supreme Court as the prevailing norms of practice. *See, Padilla v. Kentucky,* 559 U.S. 356, 366 (2010); *Harden v. State,* 180 A.3d 1037, 1046 (Del. 2018). Petitioner cites specifically ABA Standard 4-1.3(b) (Continuing Duties of Defense Counsel) and ABA Standard 4-9.6(d) (Challenges to the Effectiveness of Counsel).

[93] ABA Standing Committee on Ethics and Professional Responsibility, Formal Opinion 10-456, "Disclosure of Information to Prosecutor When Lawyer's Former Client Brings Ineffective Assistance of Counsel Claim" (July 14, 2010).

21

I agree with the precepts set forth in the Delaware Rules of Professional Conduct, the ABA Standards for Criminal Justice and ABA Formal Ethics Opinion 10-456, that Trial Counsel generally has a continuing duty of confidentiality and loyalty with respect to Petitioner, except to the extent necessary to respond to allegations of ineffective assistance by Trial Counsel. There are no claims against Trial Counsel, and he is not a party to the Rule 61 Motion. The issue in a collateral claim for relief like a Rule 61 Motion is whether Petitioner's constitutional right to the effective assistance of counsel was violated. Trial Counsel may not advocate for the denial of Petitioner's claims on the merits, because the legal controversy is not between the client and the lawyer.[94]

However, it is unnecessary for me to opine on whether the fourteen passages from Trial Counsel's Affidavit cited by Postconviction Counsel are, or are not, ethical violations, for several reasons. First, I am loathe to consider ethical violations alleged by Petitioner against a lawyer who is not a party to the Rule 61 Motion, and who has not had a chance to respond to the allegations, particularly if such consideration is unnecessary for the disposition of the case. Second, cases should be decided on the narrowest possible grounds, and consideration of the alleged ethical violations is unnecessary to the disposition

---

[94] Del. Lawyers' R. Prof'l Conduct 1.6(b)(5); ABA Formal Opinion 10-456 at 3-4 (2010).

22

of this case. I have excluded all of the disputed passages; they are not cited in this opinion, nor have I considered or relied on them in any way in rendering this opinion. In my view, and without deciding the ethical issues either way, even with the exclusion of the disputed passages, and based on the record of the pretrial, trial and appellate proceedings in this case, and the Rule 61 Motion, the Response, the Reply, Trial Counsel's Affidavit (excluding the disputed passages) and Petitioner's Affidavit, Petitioner is not entitled to relief under the *Strickland* standards, as discussed above.

## V.    CONCLUSION

Therefore, Petitioner Elton Pumphrey's Motion for Postconviction Relief is **DENIED**, and his Motion to Strike Portions of Trial Counsel's Affidavit is **DISMISSED AS MOOT**. I am entering this Opinion as my **ORDER**. **IT IS SO ORDERED.**

_____
Craig A. Karsnitz

cc: Prothonotary

FILED PROTHONOTARY SUSSEX COUNTY 2020 OCT 19 P 12:17

23