# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| **STATE OF DELAWARE** | ) | |
| | ) | |
| **v.** | ) | **ID Nos. 1708006225 and** |
| | ) | **1708003578** |
| **MICHAEL J. LINDSEY,** | ) | |
| **Defendant.** | ) | |

Submitted: December 6, 2022
Decided: March 16, 2023

## <u>ORDER DENYING POSTCONVICTION RELIEF<br>AND GRANTING COUNSEL'S MOTION TO WITHDRAW</u>

Upon consideration of Defendant Michael J. Lindsey's Motion for Postconviction Relief (D.I. 44)[1], his several amendments and supplements thereto (D.I. 45, 47-48, 66, 68-69, 71, 78, 81)[2], the State's responses (D.I. 67, 80, 82), his

---

[1] To avoid confusion, unless otherwise noted, the Court will reference only the docket entries from Case ID No. 1708006225. And when a document or transcript has been included in the Appendix to Postconviction Counsel's Motion to Withdraw (D.I. 60), the page references to that appendix are also included ("A-___").

[2] Mr. Lindsey has docketed numerous filings including applications he entitles: "Motion for Correction of Sentence, or, In the Alternative, Motion for Postconviction Relief Pursuant to Rule 61" (D.I. 42); "Motion for Correction Sentence Pursuant to Rule 35(a)-Amended Motion" (D.I. 61) "Notice of Amended Motion to Rule 35(a)" (D.I. 63); "'Amended' Motion for Correction Sentence Pursuant to Rule 35(a), OR, In the Alternative, Motion for Postconviction Relief Pursuant to Rule 61" (D.I. 64); "Amended Motion to the final response pursuant to the Rule 35(a) Correction of an illegal sentence or in the alternative, Rule 61" (D.I. 71). The Court has reviewed each document filed by Mr. Lindsey and determined that his overlapping averments and arguments addressing his habitual criminal sentencing comprise a single claim of ineffective assistance of counsel or stand-alone court error relating to his sentencing as a habitual criminal for his Possession of a Firearm by a Person Prohibited conviction (IN17-08-1753). *See Wilson v. State*, 2006 WL 1291369, at *1 n.3 (Del. May 9, 2006) (court examining such filings must ignore the label an inmate attaches to his claim and, instead, consider the true substance of the claim). So this decision resolves each of those applications jointly and severally.

postconviction counsel's Motions to Withdraw (D.I. 59-60, 77), the affidavit of his trial/direct appeal counsel (D.I. 65), and the record in this case, it appears to the Court that:

## I.  FACTUAL AND PROCEDURAL BACKGROUND

(1)    On August 9, 2017, Wilmington police officers saw Michael Lindsey leaving the Star Pizza Shop at 30th and Market Streets.  The police were in the area to take Mr. Lindsey into custody on a pending arrest warrant for an aggravated menacing incident that occurred four days earlier.  And when he saw the police, he took off on foot.  One officer chased Mr. Lindsey commanding him to stop.

(2)    As he was running, Mr. Lindsey held his waistband.  The officer chasing on foot could not tell whether Mr. Lindsey was pulling up his pants or trying to conceal a weapon.  That officer closed to within six feet of Mr. Lindsey when Mr. Lindsey threw a gun with his left hand.

(3)    Another WPD officer saw Mr. Lindsey running from the first. So, he drove his patrol car through a nearby alley in an effort to cut off Mr. Lindsey. When informed of Mr. Lindsey's actions, that second officer found the pistol Mr. Lindsey had tossed to the ground and secured it at the scene.  That firearm was a loaded black Hi-Point nine-millimeter handgun.  And once gathered, it was processed for DNA collection by a WPD Forensic Services Unit officer.

(4)    Those DNA swabs were sent to the Delaware Department of Safety and

Homeland Security's Division of Forensic Sciences where a DNA analyst compared the swabs taken from the gun to Mr. Lindsey's known DNA. The DNA swab collected from the trigger of the gun matched Mr. Lindsey's DNA profile exclusively. The analyst also determined that Mr. Lindsey was a major contributor to a mixed sample found on the gun's grip.

(5) A WPD detective was also assigned to investigate Mr. Lindsey's case—both the menacing crimes of August 5th that led to his wanted status and the August 9th flight that led to his arrest and the handgun's recovery. That detective wasn't present when Mr. Lindsey was arrested by patrol officers, but he did revisit the street scene five days after Mr. Lindsey's arrest. As part of his investigation, the detective checked the businesses close to the 30th and Market intersection to determine whether there were surveillance cameras that might have captured Mr. Lindsey's interaction with police.

(6) That detective discovered that the gas station connected to the Star Pizza had multiple security cameras that might have recorded Mr. Lindsey running from police. It was his experience that such systems usually stored video for 30 days. But when he visited, he learned the owners of the gas station had recently upgraded to a new system that stored video recordings for only 3 or 4 days and anything that might have been caught by their cameras on August 9th had already been overwritten.

(7) A few weeks after Mr. Lindsey's arrest, a Superior Court grand jury indicted him on twelve counts alleging Aggravated Menacing, two counts of Unlawful Imprisonment First Degree, three counts of Possession of a Firearm During the Commission of a Felony, two counts Possession of a Firearm by a Person Prohibited ("PFBPP"), two counts of Possession of Ammunition by a Person Prohibited ("PABPP"), Carrying a Concealed Deadly Weapon ("CCDW"), and Resisting Arrest.[3]

(8) With the agreement of the parties, the Court severed the Resisting Arrest, CCDW and one count each of the PFBPP and PABPP charges—that is, those crimes that occurred on August 9th. And all agreed trial of those August 9th offenses would commence first.[4]

(9) Following a two-day jury trial, Mr. Lindsey was convicted of PFBPP, PABPP, CCDW, and misdemeanor resisting arrest (as a lesser offense of the felony charged).[5]

---

[3]   Indictment, *State v. Michael J. Lindsey*, ID No. 1708006225 (Del. Super. Ct. Sept. 18, 2017) (D.I. 3) (A-022-026). This indictment consolidated Mr. Lindsey's two cases: the aggravated menacing and related charges that occurred on August 5, 2017; and the resisting arrest and related charges that occurred on August 9, 2017, when police arrested him Lindsey for the August 5th aggravated menacing.

[4]   Severance Stipulation and Order, *State v. Michael J. Lindsey*, ID No. 1708006225 (Del. Super. Ct. Jan. 31, 2018) (D.I. 19) (A-027-028).

[5]   Verdict Sheet, *State v. Michael J. Lindsey*, ID No. 1708006225 (Del. Super. Ct. Feb. 8, 2018) (D.I. 28); Trial Tr., Feb. 8, 2018, at 258-261 (D.I. 38) (A-412-415).

(10)   Thereafter, the State moved to declare and sentence Mr. Lindsey as a habitual criminal offender under 11 *Del. C.* § 4214(d) and asked that that provision be applied to both his PFBPP and CCDW convictions.[6]

(11)   Prior to sentencing, the parties reached a plea agreement that addressed Mr. Lindsey's severed and still-pending August 5th charges.  That plea was entered the day Mr. Lindsey was set to be sentenced for the earlier trial convictions and thereunder:  (i) Mr.  Lindsey pleaded guilty to aggravated menacing; (ii) the State entered a *nolle prosequi* to the remaining open charges; (iii) Mr. Lindsey agreed that he was subject to habitual criminal sentencing under 11 *Del. C.* §§ 4214(a), (c), and (d), but the State agreed not to seek habitual sentencing for the aggravated menacing; and, (iv) the State agreed to cap its sentencing recommendation for all charges combined at 15 years of unsuspended prison time.[7]  Through that plea agreement, the State also agreed to file an amended habitual criminal sentencing motion that sought application of § 4214(d) to only Mr. Lindsey's PFBPP sentence—dropping the CCDW count from its previously filed petition.[8]

---

[6]   Mot. to Dec. Def.  Habitual Offender, *State v. Michael J. Lindsey*, ID No. 1708006225 (Del. Super. Ct. Apr. 5, 2018) (D.I. 31) (seeking habitual sentencing for both the PFBPP and CCDW counts) (A-422-478).

[7]   Plea Agreement and TIS Guilty Plea Form, *State v. Michael J. Lindsey*, ID No. 1708003578 (Del. Super. Ct. July 16, 2018) (D.I. 40) (A-535-537).

[8]   Amended Mot. to Dec. Def.  Habitual Offender, *State v. Michael J. Lindsey*, ID No. 1708006225 (Del. Super. Ct. July 16, 2018) (D.I. 33) (seeking habitual sentencing for the PFBPP conviction only) (A-479-534).

(12)   The Court then held a hearing on the State's amended habitual criminal petition where Mr. Lindsey admitted he had incurred the requisite convictions to support his sentencing under 11 *Del. C.* § 4214(d).[9]   After review of the State's petition and making the necessary findings, the Court granted the State's motion to sentence Mr. Lindsey's present PFBPP conviction under 11 *Del. C.* § 4214(d).[10]   Mr. Lindsey was then sentenced to serve, *inter alia*, a 15-year term of unsuspended imprisonment—comprised, in part of a statutory minimum term of incarceration[11] and, in part, of a habitual criminal sentence[12]—followed by lower levels of supervision.[13]

(13)   Mr. Lindsey filed a direct appeal to the Delaware Supreme Court. His

---

[9]   Habitual Offender Hearing and Sentencing Tr., *State v. Michael J. Lindsey*, ID No. 1708003578 (Del. Super. Ct. July 16, 2018), at 10-11 (D.I. 40) (A-549-550).

[10]   Order Dec. Def. Habitual Offender, *State v. Michael J. Lindsey*, ID No. 1708006225 (Del. Super. Ct. July 16, 2018) (D.I. 34) (A-538-539); Sentencing Tr., at 11-12 (A-550-551).

[11]   In Mr. Lindsey's case, the PFBPP is a class C felony. *See* DEL. CODE ANN. tit. 11, §§ 1448(c) and (e)(1) (2017) (PFBPP due to a prior violent felony is a class C felony); *id.* at § 1448(e)(1)(c) (providing that any person convicted of PFBPP "shall receive a minimum sentence of: Ten years at Level V, if the person has been convicted on 2 or more separate occasions of any violent felony.").

[12]   DEL. CODE ANN. tit. 11, § 4214(d) (2017) (providing that for one, like Mr. Lindsey, who had been twice previously convicted of Title 11 violent felonies and is thereafter convicted of another Title 11 violent felony can be declared a habitual criminal; such a habitual criminal must receive a minimum sentence of not less than the statutory maximum penalty otherwise provided for the triggering Title 11 violent felony (or felonies) that form the basis of the State's habitual criminal petition); *id.* at §§ 1448(c), (e)(1), 4201(c), and 4205(b)(3) (maximum sentence for PFBPP as a class C violent felony is 15 years at Level V).

[13]   Sentencing Order, *State v. Michael J. Lindsey*, ID No. 1708006225 (Del. Super. Ct. July 16, 2018) (D.I. 35) (A-559-561).   For his remaining crimes, Mr. Lindsey was sentenced to a cumulative 22-year term of imprisonment—all of which was suspended for intensive probation. *Id.*

-6-

convictions and sentence were affirmed.[14]

(14) Throughout all the trial, plea, sentencing, and appellate proceedings just outlined, Mr. Lindsey was represented by John S. Malik, Esquire.

## II. MR. LINDSEY'S MOTION FOR POSTCONVICTION RELIEF

(15) Mr. Lindsey filed, *pro se*, the present Motion for Postconviction Relief[15] and a Motion for Appointment of Counsel.[16] The Court granted application for counsel[17] and Natalie S. Woloshin, Esquire, was appointed to represent Mr. Lindsey in his postconviction proceeding.

(16) Ms. Woloshin has now filed a Motion to Withdraw as Counsel.[18] In

---

[14] *Lindsey v. State*, 2019 WL 1556684 (Del. Apr. 9, 2019) (A-610).

[15] Def.'s Mot. for Postconviction Relief and Memorandum of Law, *State v. Michael J. Lindsey*, ID No. 1708006225 (Del. Super. Ct. Apr. 2, 2020) (D.I. 44 and 45) (A-612-624).

[16] Def.'s Mot. for Appt. of Counsel, *State v. Michael J. Lindsey*, ID No. 1708006225 (Del. Super. Ct. Apr. 2, 2020) (D.I. 46).

[17] Order Granting Def.'s Mot. for Appt. of Counsel, *State v. Michael J. Lindsey*, ID No. 1708006225 (Del. Super. Ct. June 8, 2020) (D.I. 49) (A-642-645).

[18] PCR Counsel's Mot. to Withdraw, *State v. Michael J. Lindsey*, ID No. 1708006225 (Del. Super. Ct. June 8, 2020) (D.I. 69). At the August 8, 2022 hearing, Ms. Woloshin informed the Court that evidence concerning a then-ongoing (but unrelated) criminal investigation into a former WPD officer who had some involvement in Mr. Lindsey's cases could give rise to an additional postconviction claim. PCR H'rg Tr. at 20-21, *State v. Michael J. Lindsey*, ID No. 1708006225 (Del. Super. Ct. Aug. 8, 2022) (D.I. 79). Thereafter, Ms. Woloshin was to either file an amended motion for postconviction relief or an amended motion to withdraw. *Id.* at 30. Ms. Woloshin filed an amended motion to withdraw wherein she explained that that the subject officer's later illegal conduct did not taint any part of Mr. Lindsey's investigation. Am. Mot. to Withdraw at ¶¶ 25-27, *State v. Michael J. Lindsey*, ID No. 1708006225 (Del. Super. Ct. Sept. 7, 2022) (D.I. 77). Mr. Lindsey responded to Ms. Woloshin's amended motion; he says there is enough evidence of improper conduct and bias on the part of WPD to warrant a new trial under Rule 61. Def. Supp. Ltr. at 1, 9-10, *State v. Michael J. Lindsey*, ID No. 1708006225 (Del. Super. Ct. Sept. 29, 2022) (D.I. 78).

her motion, Ms. Woloshin reports that, after careful review of Mr. Lindsey's case, Mr. Lindsey's claims are so lacking in merit that she cannot ethically advocate for them; and further, that she is not aware of any other substantial grounds for relief.[19]

(17) Under this Court's Criminal Rule 61(e)(7):

> If counsel considers the movant's claim to be so lacking in merit that counsel cannot ethically advocate it, and counsel is not aware of any other substantial ground for relief available to the movant, counsel may move to withdraw. The motion shall explain the factual and legal basis for counsel's opinion and shall give notice that the movant may file a response to the motion within 30 days of service of the motion upon the movant.[20]

(18) Ms. Woloshin provided Mr. Lindsey with a copy of her withdrawal motion (and amendment) and advised Mr. Lindsey of his ability under Rule 61(e)(7) to file a response thereto.[21] Mr. Lindsey has filed numerous supplements contesting Ms. Woloshin's motion and in the main championing his proposition that his PFBPP sentence was incorrectly enhanced by the Court's consideration of his predicate felony convictions as "violent felonies."[22] Mr. Lindsey's trial and appellate counsel, Mr. Malik, has filed an affidavit addressing Mr. Lindsey's postconviction claims.[23] And the State has filed its responses opposing Mr. Lindsey's postconviction

---

[19] PCR Counsel's Mot. to Withdraw, at 1, 23; Am. Mot. to Withdraw at ¶¶ 25-27.

[20] Super. Ct. Crim. R. 61(e)(7).

[21] D.I. 58.

[22] *See* n.2, *supra*.

[23] Trial Counsel Aff., *State v. Michael J. Lindsey*, ID No. 1708006225 (Del. Super. Ct. May 28, 2021) (D.I. 65).

motion.[24]

## III. RULE 61'S PROCEDURAL REQUIREMENTS

(19)   To evaluate Mr. Lindsey's postconviction claims, and to determine whether his latest counsel's motion to withdraw should be granted, the Court should be satisfied that Ms. Woloshin conducted a truly conscientious examination of the record and the law for claims that could arguably support Mr. Lindsey's Rule 61 motion.  The Court should also conduct its own review of the record to determine whether Mr. Lindsey's Rule 61 motion is devoid of any, at least, arguable postconviction claims.[25]

(20)   Delaware courts must consider Criminal Rule 61's procedural requirements before addressing any substantive issues.[26]  The procedural bars of Rule 61 are "timeliness, repetitiveness, procedural default, and former adjudication."[27]  Here, Mr. Lindsey's motion is timely; it was filed less than a year after his judgment of conviction became final.[28]  This is Mr. Lindsey's first Rule 61

---

[24]   State's Resp., *State v. Michael J. Lindsey*, ID No. 1708006225 (Del. Super. Ct. June 8, 2020) (D.I. 67); State's Supp. Ltr., *State v. Michael J. Lindsey*, ID No. 1708006225 (Del. Super. Ct. Nov. 10, 2022) (D.I. 82).

[25]   *State v. Caulk*, 2021 WL 2662250, at *4 (Del. Super. Ct. June 29, 2021), *aff'd*, 2022 WL 320575 (Del. Feb. 2, 2022).

[26]   *Maxion v. State*, 686 A.2d 148, 150 (Del. 1996); *State v. Jones*, 2002 WL 31028584, at *2 (Del. Super. Ct. Sept. 10, 2002).

[27]   *State v. Stanford*, 2017 WL 2484588, at *2 (Del. Super. Ct. Jun. 7, 2017).

[28]   Def.'s Mot. for Postconviction Relief (D.I. 44) (A-612-620); Supreme Court Mandate, *State v. Michael J. Lindsey*, ID No. 1708006225 (Del. Super. Ct. Apr. 30, 2019) (D.I. 41) (A-608-609).

application. So, it's not repetitive.

(21) Rule 61(i)(3) states, too, that "[a]ny ground for relief that was not asserted in the proceedings leading to the judgment of conviction, as required by the rules of this court, is thereafter barred, unless the movant shows . . . [c]ause for relief from the procedural default and . . . [p]rejudice from violation of the movant's rights."[29] Though this bar is inapplicable to allegations of ineffective assistance of counsel that, in all but the rarest of circumstances, couldn't have been raised on direct appeal.[30] In turn, Mr. Lindsey's ineffective assistance of counsel claims aren't procedurally barred here. So, the Court has reviewed each of his four claims of ineffective assistance of counsel (and their subvariants) for some potential merits.

## IV.  DISCUSSION

### A. INEFFECTIVE ASSISTANCE OF COUNSEL--TRIAL CLAIMS.

(22) A claim of ineffective assistance of counsel is reviewed under the familiar two-part *Strickland* test.[31] A claimant asserting ineffective assistance of counsel must demonstrate that: (i) his defense counsel's representation fell below an objective standard of reasonableness, and (ii) there is a reasonable probability that,

---

[29] Super. Ct. Crim. R. 61(i)(3).

[30] *State v. Coverdale*, 2018 WL 259775, at *2 (Del. Super. Ct. Jan. 2, 2018).

[31] *Strickland v. Washington*, 466 U.S. 668, 688-94 (1984); *Neal v. State*, 80 A.3d 935, 946 (Del. 2013).

but for counsel's errors, the result of his proceedings would have been different.[32]

(23) For the first prong, deficient performance, the burden is on the claimant to show that counsel's conduct fell below an objective standard of reasonableness, "*i.e.*, that no reasonable lawyer would have conducted the defense as his lawyer did."[33] There is a strong presumption that counsel's representation was reasonable,[34] and "[i]t is not this Court's function to second-guess reasonable [ ] tactics" engaged by trial counsel.[35] Indeed, an attorneys strategic or tactical choices made after thorough investigation of the relevant law and facts are virtually unchallengeable.[36]

(24) Too, one claiming ineffective assistance "must make specific allegations of how defense counsel's conduct actually prejudiced the proceedings, rather than mere allegations of ineffectiveness."[37] This second prong requires the claimant to show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[38]

---

[32] *Strickland*, 466 U.S. at 688-94; *see also Alston v. State*, 2015 WL 5297709, at *3 (Del. Sept. 4, 2015).

[33] *Green v. State*, 238 A.3d 160, 174 (Del. 2020) (citing *Burger v. Kemp*, 483 U.S. 776, 791 (1987)).

[34] *Wright v. State*, 671 A.2d 1353, 1356 (Del. 1996).

[35] *State v. Drummond*, 2002 WL 524283, at *1 (Del. Super. Ct. Apr. 1, 2002).

[36] *Green*, 238 A.3d at 174.

[37] *Alston*, 2015 WL 5297709, at *3 (citing *Wright*, 671 A.2d at 1356); *Monroe v. State*, 2015 WL 1407856, at *5 (Del. Mar. 25, 2015) (citing *Dawson v. State*, 673 A.2d 1186, 1196 (Del. 1996)); *Zebroski v. State*, 822 A.2d 1038, 1043 (Del. 2003).

[38] *Starling v. State*, 130 A.3d 316, 325 (Del. 2015) (quoting *Strickland*, 466 U.S. at 694).

(25) An inmate must prove ***both*** deficient attorney performance ***and*** resulting prejudice to succeed in making an ineffective assistance of counsel claim. Failure in the first instance to prove either will doom his claim, and the Court need not address the other.[39]

### 1. Mr. Lindsey's "Unreasonable Defense" Claims

(26) In his first and fourth complaints of ineffective assistance of trial counsel, Mr. Lindsey alleges that Mr. Malik failed to: (i) argue that any DNA analysis conducted by the Division of Forensic Science (DFS) was tainted by a firearm ballistics expert formerly employed by the Delaware State Police; (ii) adequately challenge the DNA analysis that identified his DNA on the firearm; (iii) cross-examine the chief investigating officer on his alleged "bias" due to his prior case in which Mr. Lindsey was a shooting victim; and (iv) dispute the admissibility of the testing results of the mixed DNA sample.[40] In order to prevail on this claim, Mr. Lindsey must prove, again, (i) deficient performance, and (ii) resulting prejudice.[41] He fails to do so.

(27) Mr. Lindsey is factually mistaken in his "tainted" DNA analysis claim.

---

[39] *Strickland*, 466 U.S. at 697; *Ploof v. State*, 75 A.3d 811, 825 (Del. 2013) ("*Strickland* is a two-pronged test, and there is no need to examine whether an attorney performed deficiently if the deficiency did not prejudice the defendant"); *State v. Hamby*, 2005 WL 914462, at *2 (Del. Super. Ct. Mar. 14, 2005).

[40] Def.'s Mot. for Postconviction Relief, at 5-7 (A-617-619).

[41] *Strickland*, 466 U.S. at 688-94.

The former Delaware State Police employee he references was not involved in his case in any way. Indeed, it was a completely different state entity that conducted the forensic DNA testing of the samples from the firearm he tossed. Put simply, Mr. Lindsey seems to fault his trial counsel because he didn't investigate matters that were wholly unrelated and inadmissible in Mr. Lindsey's case. "While defense counsel has a general duty to investigate, he need not travel blind alleys in hope they might lead to something helpful to his client's case."[42]

(28) The credible evidence in the postconviction record belies Mr. Lindsey's protestations that his counsel did not properly contest the DNA evidence admitted at his trial. Mr. Malik had fully familiarized himself with the proffered DNA reports and evidence, probed certain of the State's DNA analysis's findings via *voir dire*, and made informed strategic decisions on what to highlight and what to avoid regarding the potential for DNA transference and officer credibility.

(29) A criminal defense attorney is given wide latitude in making strategic trial decisions; this extends to the conduct of cross-examination.[43] The questions to be asked and how a given cross-examination is conducted are tactical decisions.[44] And when challenging those decisions, the movant has the

---

[42] *State v. Harrell*, 2017 WL 2418278, at *2 (Del. Super. Ct. June 5, 2017).

[43] *State v. Powell*, 2016 WL 3023740, at *25 (Del. Super. Ct. May 24, 2016).

[44] *Outten v. State*, 720 A.2d 547, 557 (Del. 1998) ("Whether to call a witness, and how to cross-examine those who are called are tactical decisions."); *see also* Jean K. Gilles Phillips, and Joshua Allen, *Who Decides: The Allocation of Powers Between the Lawyer and the Client in a*

-13-

burden of supplying precisely what information would have been obtained had counsel conducted the cross as the complaining inmate desired and just how this information would have changed the result of his trial.[45]

(30)   What's more, the decision whether to file a given motion is a strategic decision and a matter of professional judgment.  Such a decision will be upheld if it is reasonable.[46]  And an inmate cannot demonstrate prejudice by defense counsel's failure to file any motion if that motion were likely to fail even if it were filed.[47]

(31)   To the extent Mr. Lindsey now disagrees with the manner the DNA evidence and officer testimony was contested, Mr. Malik has explained that he avoided asking certain questions either because of their lack of strategic value or because such a line of questioning would have prejudiced Mr. Lindsey.[48]  And in the end, Mr. Malik, "[b]ased on [his] preparation prior to trial and *voir dire* during trial, [he] determined there was no basis to file a motion *in limine* either prior to or during trial to seek to exclude the DNA analyst's testimony pertaining to the mixed DNA

---

*Criminal Case?*, 71 J. KAN. BAR ASS'N 28, 29 (2002) (citing *Wainwright v. Sykes*, 433 U.S. 72, 93 n.1 (1977)) ("[T]he United States Supreme Court [has] held that the attorney possesses the right to decide certain strategic and tactical decisions, including what witnesses to call, whether and how to conduct cross-examination, what trial motions should be made, and what evidence should be introduced.").

[45]   *See Outten*, 720 A.2d at 557 (quoting *U.S. v. Rodriguez*, 53 F.3d 1439, 1449 (7th Cir. 1995)).

[46]   *See Pennewell v. State*, 2005 WL 578444, at *1 (Del. Jan. 26, 2005).

[47]   *See Poteat v. State*, 2007 WL 2309983, at *1 (Del. Aug. 14, 2007); *Bratcher v. State*, 2008 WL 2475741, at *1 (Del. June 20, 2008).

[48]   Trial Counsel Aff, at 6-8.

-14-

profile found on one portion of the handgun." [49]

(32)   "When a defendant is represented by counsel, the authority to manage the day-to-day conduct of the defense rests with the attorney."[50]   And an attorney's informed decision as to what evidence to admit and whom to call is a tactical decision that deserves great weight and deference.[51]   Indeed, "the United States Supreme Court [has] held that the attorney possesses the right to decide certain strategic and tactical decisions, including what witnesses to call, whether and how to conduct cross-examination, what trial motions should be made, and what evidence should be introduced."[52] Mr. Lindsey has thus failed to overcome the strong presumption that his counsel acted reasonably[53] and on that basis alone his ineffectiveness claim as to the manner the DNA evidence and officer testimony was contested must fail.[54]

---

[49]   *Id.*at 10-11.

[50]   *Cooke v. State*, 977 A.2d 803, 840 (Del. 2009).

[51]   *See Wainwright v. Sykes*, 433 U.S. 72, 93 (1977) (Burger, C.J., concurring) (noting that the defense attorney "has the immediate and ultimate responsibility of deciding if and when to object, which witnesses, if any, to call, and what defenses to develop"); *Clark v. State*, 2014 WL 5408410, at *4 (Del. Oct. 21, 2014) ("The trial court had no obligation to second-guess or contravene defense counsel's strategy and make sure that [defendant] agreed with his counsel's strategic choice. Indeed, it would not have been appropriate.").

[52]   Phillips, Jean K. Gilles, and Joshua Allen, *Who Decides: The Allocation of Powers Between the Lawyer and the Client in a Criminal Case?*, 71–Oct. J. Kan. B.A. 28 (2002) (citing *Wainwright v. Sykes*, 433 U.S. at 93 n.1); *see also Strickland*, 466 U.S at 690-91.

[53]   *Burns*, 76 A.3d at 788 ("Under *Strickland*, the strategic decisions made by counsel are entitled to a strong presumption of reasonableness.").

[54]   *See State v. McGlotten*, 2011 WL 987534, at *4 (Del. Super. Ct. Mar. 21, 2011), *aff'd*, 2011 WL 3074790 (Del. July 25, 2011) ("To restate the requirements of *Strickland,* a defendant must

(33) Lastly, Mr. Lindsey fails to address the other necessary *Strickland* showing—that, but for Mr. Malik's conduct, the outcome of the trial would have been different (*i.e.*, that Mr. Lindsey would have been acquitted of the charges he was convicted of).[55] For this reason too, Mr. Lindsey's ineffectiveness claim alleging some failure to adequately contest the DNA evidence and police testimony regarding their observations during his flight from them and later evidence handling fails.

## 2. Lack of surveillance video footage from the 30th and Market area

(34) In his third claim, Mr. Lindsey contends that he was denied effective assistance because Mr. Malik failed to independently verify that the businesses in the area of his August 9th arrest did not capture the police chase on video. He also makes an independent "missing favorable evidence" claim.[56]

(35) At trial, Mr. Malik cross-examined the chief investigating detective about his failure to secure any local business's surveillance footage and the lack of police body camera video recordings.[57] His strategy was to lay the foundation for

---

establish two things, not just one: that trial counsel's performance was deficient **and** that but for that deficiency, the outcome of the proceedings would have been different. If a defendant cannot establish both prongs, then the ineffective assistance of counsel claim fails.") (emphasis in original).

[55] *Wright*, 671 A.2d at 1356 ("Mere allegations of ineffectiveness will not suffice. A defendant must make specific allegations of actual prejudice and substantiate them.").

[56] Def.'s Mot. for Postconviction Relief, at 8 (A-620).

[57] Trial Tr., Feb. 8, 2018, at 49-69 (A-203-223).

his later-requested *Lolly/Deberry* jury instruction,[58] *i.e.,* an instruction that the jury should infer that any such video evidence would have been exculpatory to Mr. Lindsey had the State obtained and preserved it.[59] While the application for a missing evidence instruction was ultimately unsuccessful at trial,[60] Mr. Malik's investigation and pursuit of this issue at trial was wholly reasonable.[61] And Mr. Lindsey cannot show that possible pursuit of more information to confirm the detective's findings or efforts to independently obtain videos the police could not would have been at all fruitful; much less, would have likely resulted in a different outcome at trial.[62]

(36) Mr. Malik further pressed the failure of the police to collect any video evidence and this Court's failure to give a *Lolly/Deberry* instruction on direct appeal.[63] The Delaware Supreme Court rejected that claim and affirmed this Court's judgment on the issue "on the basis of and for the reasons assigned in its February

---

[58] *Id*. at 148-162, 167-169 (A-302-316, 321-323); Trial Counsel Aff, at 9-10.

[59] *Lolly v. State*, 611 A.2d 956, 961-62 (Del. 1992); *Deberry v. State*, 457 A.2d 744, 751-54 (Del. 1983).

[60] Trial Tr., Feb. 8, 2018, at 169-178 (A-323-332).

[61] *Hoskins v. State*, 102 A.3d 724, 730 (Del. 2014) ("If an attorney makes a strategic choice 'after thorough investigation of law and facts relevant to plausible options,' that decision is 'virtually unchallengeable' . . .").

[62] *See Monroe v. State*, 2015 WL 1407856, at *5-6 (Del. Mar. 25, 2015) (Postconviction movant's mere acknowledgment that the complained-of omitted evidence "could have been extremely harmful or extremely beneficial" was insufficient because "*Strickland* requires more than mere possibility of prejudice; a petitioner in a Rule 61 motion alleging ineffective assistance of counsel 'must make specific allegations of actual prejudice and substantiate them.'").

[63] App. Open. Brf., *Lindsey v. State*, No. 411, 2018 (Del. Oct. 29, 2018) (A-564-606).

8, 2018 transcript ruling."[64]

(37) Under Rule 61(i)(4): "[a]ny ground for relief that was formerly adjudicated, whether in the proceedings leading to the judgment of conviction, in an appeal, in a postconviction proceeding, or in a federal habeas corpus proceeding, is thereafter barred."[65] So, the current substantive claim complaining again of "missing favorable evidence" is procedurally barred.

## B. ENHANCEMENT OF MR. LINDSEY'S PFBPP SENTENCE IS REQUIRED.

(38) Prior to Mr. Lindsey's decision to carry the loaded 9mm handgun police caught him with on August 9, 2017, he had been previously convicted in this Court of second-degree robbery in 1991[66] and of PFBPP in 1994.[67] He had also been convicted in United States District Court for the District of Delaware of the federal analog to PFBPP in 2008.[68] With these convictions, Mr. Lindsey admitted in his written plea paperwork that resolved his August 5th aggravated menacing charges that "he is eligible for sentencing pursuant 11 Del. C. 4214(a), (c), and (d)."[69]

(39) As consideration for that plea and admission, the State: (i) dismissed

---

[64] *Lindsey v. State*, 2019 WL 1556684, at *1 (Del. Apr. 9, 2019).

[65] Super. Ct. Crim. R. 61(i)(4); *see also Floyd v. State*, 1995 WL 622408, at *2 (Del. 1995).

[66] Ex. A, Amended Mot. to Dec. Def. Habitual Offender (D.I. 33) (A-486-501).

[67] Ex. B, Amended Mot. to Dec. Def. Habitual Offender (A-502-513).

[68] Ex. C, Amended Mot. to Dec. Def. Habitual Offender (A-514-534).

[69] Plea Agreement and TIS Guilty Plea Form, *State v. Michael J. Lindsey*, ID No. 1708003578 (Del. Super. Ct. July 16, 2018) (D.I. 40) (A-535-537).

the numerous other felony charges Mr. Lindsey faced from the August 5th incident;[70] (ii) agreed to amend its already-filed habitual criminal petition to seek habitual criminal sentencing only for Mr. Lindsey's PFBPP sentence—dropping the CCDW count from its previously filed petition and agreeing not to seek habitual sentencing for the aggravated menacing count; and, (iii) capped its sentencing recommendation for all charges combined at 15 years of unsuspended prison time.[71] For his part, Mr. Lindsey expressly agreed that he was subject to habitual criminal sentencing as just mentioned.[72] The State followed through with its part of the plea deal and filed the agreed-upon amended habitual criminal sentencing motion.[73]

(40) Mr. Lindsey now wants to renege—saying Mr. Malik was ineffective for allowing him to agree he had the requisite felonies to support § 4214(d) sentencing or that the Court erred in applying that habitual sentencing provision.

---

[70] Those felonies were hardly inconsequential. They included two counts of first-degree unlawful imprisonment, three counts of possession of a firearm during the commission of a felony (PFDCF), another count of PFBPP and an illegal possession of ammunition charge. And the base of those charges on their own—without accounting for any sort of statutory or habitual sentencing enhancement—exposed Mr. Lindsey to anywhere from an additional minimum of nine years imprisonment up to somewhere well over 75 years. *E.g.* DEL. CODE ANN. tit. 11, §§ 1447A, 4201(c), and 4205(b)(2) (2017) (PFDCF itself is a violent class B felony carrying a minimum of three years and a maximum of 25 years at Level V).

[71] Plea Agreement and TIS Guilty Plea Form, *State v. Michael J. Lindsey*, ID No. 1708003578 (Del. Super. Ct. July 16, 2018) (D.I. 40) (A-535-537).

[72] *Id.*

[73] Amended Mot. to Dec. Def. Habitual Offender, *State v. Michael J. Lindsey*, ID No. 1708006225 (Del. Super. Ct. July 16, 2018) (D.I. 33) (seeking habitual sentencing for the PFBPP conviction only) (A-479-534).

(41) *Strickland*'s framework is also used to analyze any ineffective assistance of counsel claim challenging performance in relation to a guilty plea[74] or a sentencing hearing.[75] When addressing the prejudice prong of the ineffective assistance of counsel test in the context of a challenged guilty plea, an inmate must show "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."[76] When addressing the prejudice prong of the ineffective assistance of counsel test in the context of a sentencing hearing, an inmate must show that "there is a reasonable probability that, but for counsel's error, the result of [his] sentencing would have been different."[77]

(42) To reiterate, failure to make one or the other showing under the *Strickland* test "will render the claim unsuccessful."[78] And again, if any supposed attorney shortcoming couldn't have actually prejudiced Mr. Lindsey, then there is no need to examine whether his plea/sentencing attorney did indeed perform deficiently.[79] The necessary prejudice here must be a reasonable probability that but

---

[74] *Albury v. State*, 551 A.2d 53, 58 (Del. 1988) (citing *Hill v. Lockhart*, 474 U.S. 52, 58 (1985)).

[75] *Harden v. State*, 180 A.3d 1037, 1045 (Del 2018).

[76] *Albury*, 551 A.2d at 59; *Sartin v. State*, 2014 WL 5392047, at *2 (Del. Oct. 21, 2014); *State v. Hackett*, 2005 WL 3060976, at *3 (Del. Super. Ct. Nov. 15, 2005).

[77] *Brawley v. State*, 1992 WL 353838, at *1 (Del. Oct. 7, 1992); *State v. Torres,* 2015 WL 5969686, at *11 (Del. Super. Ct. Oct. 2, 2015).

[78] *Hamby*, 2005 WL 914462, at *2 (citation omitted).

[79] *Ploof*, 75 A.3d at 825.

for counsel's errors, the result of his habitual criminal status and sentencing proceeding would have been different.[80] To carry his prejudice burden in these circumstances, Mr. Lindsey must prove counsel's *Strickland*-level deficient performance resulted in the application of a specific, demonstrable sentencing enhancement that would not have occurred but for counsel's error.[81]

(43) The core of Mr. Lindsey's Rule 61 and Rule 35 applications regarding his sentencing is his insistence that he is serving an "illegal sentence" because he believes neither his 1991 second-degree robbery nor his 1994 PFBPP conviction could be used to enhance his present PFBPP sentence.[82]

(44) First, Mr. Lindsey suggests that his 1991 robbery conviction could not be counted as a prior violent felony in his § 4214(d) sentencing proceeding because, in his view: (i) his commission of that offense involved no physical violence; and (ii) there has been some change in Delaware statutory or case law such that his conduct would no longer be classified as second-degree robbery.[83] An attack on the sufficiency of evidence supporting a facially valid conviction used as a sentence

---

[80] *Harden*, 180 A.3d at 1045.

[81] *State v. Peters*, 283 A.3d 668, 691 (Del. Super. Ct. 2022); *See also United States v. Otero*, 502 F.3d 331, 337 (3d Cir. 2007) (finding prejudice prong satisfied "when a deficiency by counsel resulted in a specific, demonstrable enhancement in sentencing . . . which would not have occurred but for counsel's error." (quoting *United States v. Franks*, 230 F.3d 811, 815 (5th Cir. 2000)).

[82] Mr. Lindsey also complains of the use of his federal firearms conviction. But as it is mere surplusage for the purposes of his eligibility under § 4214(d), the Court need not address that conviction here to resolve his claims.

[83] *E.g.* D.I. 64 and 66.

-21-

enhancer is not cognizable in either a habitual criminal proceeding or a Rule 35 challenge of a habitual criminal sentence.[84]  And even changes in statutory law that wholly eliminate what was once a Delaware felony do not remove one's earlier conviction for such from his later habitual criminal sentencing eligibility calculus.[85]

(45)   Next, Mr. Lindsey insists that use of his 1991 robbery and 1994 PFBPP convictions to enhance the sentence for his 2017 weapons crime violates the *ex post facto* clause.  But our Supreme Court has also expressly rejected any notion that use of prior convictions as sentencing enhancers in a circumstance like this somehow violates the *ex post facto* clause.  The Court has explained the controlling analysis and principles thusly:

> The *ex post facto* clause prohibits the retroactive application of a law that "changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed."  An *ex post facto* application of a law is one that "imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed."  The critical question in evaluating an *ex post facto* claim "is whether the law changes the legal consequences of acts committed before its effective date."

---

[84]  *See e.g. Sammons v. State*, 68 A.3d 192, 195-96 (Del. 2013) (the Court can rely on and otherwise facially valid prior felony conviction "without regard to the details of the specific conduct that resulted in [the prior] conviction"); *Hall v. State*, 2010 WL 4156348, at *1 (Del. Oct. 21, 2010) (an inmate's claim "that there is inadequate evidence of his prior convictions [alleged in his habitual criminal sentencing proceeding] does not fall within the narrow limits for a Rule 35(a) motion).

[85]  *Ayala v. State*, 204 A.3d 829, 838-40 (Del. 2019) (holding that defendant was subject to habitual-offender sentencing under Section 4214 because he "he undeniably had been convicted [previously of the requisite number of] Delaware felonies" even though the General Assembly had later eliminated or reclassified from a felony to a misdemeanor two of the predicate offenses).

The United States Supreme Court has upheld the constitutionality of recidivist statutes, explaining that "[a]n enhanced sentence imposed on a persistent offender . . . 'is not to be viewed as [an] additional penalty for the earlier crimes' but as a 'stiffened penalty for the latest crime, which is considered to be an aggravated offense because [it is] a repetitive one.'" Thus, statutes enhancing penalties for later offenses do not violate the *ex post facto* clause, even where, as here, the predicate offenses occurred before the enactment of the statute.[86]

(46) The plain language of § 4214(d) of the Habitual Criminal Act mandates: "Any person who has been 2 times convicted of a Title 11 violent felony . . . and who shall thereafter be convicted of a third or subsequent felony which is a Title 11 violent felony . . . shall receive a minimum sentence of the statutory maximum statutory penalty provided elsewhere in this title for the third or subsequent Title 11 violent felony which forms the basis of the State's petition."[87] Under both sections 1448 and 4214, a "violent felony" is one so-denominated by 11 *Del. C.* § 4201(c).[88] And there is no longer any doubt that the definition of "violent felony" as that term is used in both § 1448(e) and § 4214 would be that in the version of § 4201(c) in

---

[86]   *Chambers v. State*, 93 A.3d 1233, 1235-36 (Del. 2014) (internal citations omitted); *Walker v. State*, 2020 WL 2125803, at *3 (Del. May 4, 2020) (same when prior conviction is used a predicate for habitual criminal sentencing); *Adkins v. State*, 2022 WL 1278975, at*1 (Del. Apr. 28, 2022) (same when prior convictions enhance PFBPP sentence).

[87]   DEL. CODE ANN. tit. 11, § 4214(d) (2017).

[88]   *Id. at* § 1448(e)(3) ("For the purposes of [§ 1448(e)], 'violent felony' means any felony so designated by §  4201(c) of [Title 11], or any offense set forth under the laws of the United States, . . . which is the same as or equivalent to any of the offenses designated as a violent felony by § 4201(c) of [Title 11]."); *id*. at § 4214(d) ("a violent felony" is one "defined in § 4201(c) of [Title 11] under the laws of this State, and/or any comparable violent felony as defined by . . . [the] United States).

effect at the time Mr. Lindsey committed his 2017 PFBPP.[89]

(47) Given all this, to determine if Mr. Lindsey's sentencing claims gain any traction, one must first look to his 1991 conviction for Robbery Second Degree in violation of 11 *Del. C.* § 831.[90] That felony was a § 4201(c)-designated violent felony in 2017.[91] And it is that felony that first rendered Mr. Lindsey a person prohibited and that was alleged as the prohibitor element in his 1994 PFBPP count.[92] Inarguably then, Mr. Lindsey's 1994 PFBPP conviction is—for § 1448, § 4201(c), and § 4214 purposes—a Title 11 violent felony.[93] So too is his resultant 2017 PFBPP conviction.[94] Accordingly, the Court properly considered each of Mr. Lindsey's pre-1996 felony convictions as prior violent felony convictions that formed the predicate of Mr. Lindsey's present enhanced § 1448 conviction and that, in turn, triggered his habitual criminal status under 11 *Del. C.* § 4214(d).[95]

---

[89] *Butcher v. State*, 171 A.3d 537, 543 (Del. 2017); *State v. Daniels*, 2022 WL 2733509, at *4-5 (Del. Super. Ct. July 13, 2022), *aff'd*, 2023 WL 176964 (Del. Jan. 12, 2023); *State v. Brown,* 2022 WL 14781911, at *3 n.18 (Del. Super. Ct. Oct. 26, 2022), *aff'd*, 2023 WL 1808446 (Del. Feb. 7, 2023).

[90] Ex. A, Amended Mot. to Dec. Def. Habitual Offender (D.I. 33) (A-486-501).

[91] *See* DEL. CODE ANN. tit. 11, § 4201(c) (2017) (classifying "Title 11, Section . . . 831 Robbery in the Second Degree" as a violent felony).

[92] Ex. B, Amended Mot. to Dec. Def. Habitual Offender (A-502-513).

[93] *Butcher*, 171 A.3d at 543; *Daniels*, 2022 WL 2733509, at *4-5.

[94] *See* DEL. CODE ANN. tit. 11, § 4201(c) (2017) (classifying "Title 11, Section . . . 1448(e) Possession of a Deadly Weapon by Persons Prohibited (Firearm or Destructive Weapon Purchased, Owned, Possessed or Controlled by a Violent Felon" as a violent felony).

[95] *See* nn. 11 and 12, *supra.*

(48)   Mr. Lindsey acknowledged and understood all this at the time of his plea and sentencing hearing,[96]   And his counsel cannot be deemed ineffective for not raising the futile arguments he now poses.[97]   Nor was he prejudiced in any way; Mr. Lindsey is not serving an illegal sentence.

## V.  CONCLUSION

(49)   Having reviewed the record carefully, the Court has concluded that Mr. Lindsey's claims are without merit, and no other substantial grounds for relief exist.  He has not met his heavy burden under *Strickland* of demonstrating that his attorney's representation fell below an objective standard of reasonableness and that, but for that attorney's alleged errors, the outcome of his case would have been any different.  Most specifically, Mr. Lindsey's complaint that the Court imposed an illegal sentence under § 4214(d) of the Habitual Criminal Act is without merit.  That sentence is neither the product of some inaptness by his trial, appellate, or postconviction counsel nor of some misapprehension of the applicable facts and law by the Court.  Accordingly, Mr. Lindsey's Motion for Postconviction Relief is **DENIED** and Ms. Woloshin's Motion to Withdraw is **GRANTED**.

**SO ORDERED this 16th day of March, 2023.**

**Paul R. Wallace, Judge**

---

[96]   Sentencing Hearing Trans., at 16-18 (D.I. 40).

[97]   *State v. Prince*, 2022 WL 211704, at *7 (Del. Super. Ct. Jan. 24, 2022) (citing cases) ("Counsel cannot be found ineffective for failing to make futile arguments.").

-25-

Original to Prothonotary

cc: Erika R. Flaschner, Deputy Attorney General
Natalie S. Woloshin, Esquire
John S. Malik, Esquire
Mr. Michael J. Lindsey, *pro se*